IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ZOLA CHRISTINE PRATT, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Civil Action No.: 2:12-CV-1794-RDP |
| } | |
| MICHAEL J. ASTRUE, } | |
| Commissioner of } | |
| Social Security, } | |
| } | |
| Defendant. } | |

## MEMORANDUM OF DECISION

Plaintiff Zola Pratt brings this action pursuant to Section 205(g) of the Social Security Act ("Act"). Plaintiff seeks review of the decision of the Administrative Law Judge ("ALJ"), denying her claims for disability and disability insurance benefits (DIB). Based on the court's review of the record and briefs submitted by the parties, the court finds that the decision of the ALJ is due to be affirmed.

### I.   Proceedings Below

On February 18, 2009, Plaintiff filed applications for disability and DIB (Pl.'s Mem. 1, R. 19), which the Social Security Administration completed on March 6, 2009. (R. 140). Plaintiff's applications were denied on September 3, 2009. (R. 84). She then requested a hearing before an ALJ on September 19, 2009. (R. 89). Plaintiff's request was granted on October 22, 2009 (R. 92), and on December 14, 2010, ALJ Donald A. Rising conducted a hearing. (R. 19-27). On January 7, 2011, the ALJ entered his decision denying both applications. *Id*.

Plaintiff requested a review of the ALJ's decision on February 3, 2011 (R. 14), which the Appeals Council denied on March 2, 2012. (R. 1). As a result of the Appeal's Council's denial, the ALJ's decision became the final decision of the Commissioner and therefore a proper subject of this court's appellate review.

In her applications, Plaintiff alleged that she became disabled beginning December 11, 2008. (R. 140). Plaintiff alleges that she is disabled due to her back and neck conditions, fibromyalgia, and anxiety. (R. 161). Plaintiff last worked as an assembly line worker for Mercedes-Benz on December 11, 2008, when she was laid off. (R. 43, 161, 174). The ALJ determined that Plaintiff has severe impairments including degenerative disc disease, fibromyalgia, major depressive disorder, and anxiety. (R. 21). However, the ALJ found that Plaintiff does not have an impairment or combination of impairments that medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 23).

Further, the ALJ found that in light of Plaintiff's age, education, work experience, and residual functional capacity, that there are a significant number of jobs in the national economy that Plaintiff can perform. (R. 26). Dr. Julian M. Nadolsky, an impartial vocational expert, appeared at the hearing. (R. 19, 35, 68). Taking into account Plaintiff's limitations, Dr. Nadolsky testified that Plaintiff could work as a bearing ring assembler, oil filter inspector, decal applier, assembler of electrical accessories, wrapping machine tender, or bottoming line attendant. (R. 71).

## II.     Plaintiff's Medical History

On July 20, 2002, Plaintiff received treatment at Bessemer Carraway Medical Center for injuries she sustained in car accident. (R. 536). On November 26, 2007, Plaintiff told Dr. Moon that her pain began in 2002. (R. 293). She said that she experienced neck and lower back pain

intermittently until about 2004, when she started taking Lortab and Soma. (R. 292). Plaintiff saw Dr. Tomlinson in consultation for a lumbar epidural block on November 2, 2007. (R. 284). He found that she had a decreased range of motion of the lumbosacral spine. *Id*. On November 18, 2008, Plaintiff saw Dr. Moon for an electroneurodiagnostic report in her upper and lower extremities, which indicated that she showed no signs of neuropathy or radiculopathy. (R. 374-376).

On August 25, 2009, Plaintiff attended a medical examination with Dr. Veluz. (R. 348). Dr. Veluz found that Plaintiff has chronic back pain, as well as some difficulty squatting and walking. (R. 350-351). However, Dr. Veluz also found that Plaintiff has only a mildly reduced range of motion, and no back tenderness. (R. 350-353).

Plaintiff attended a disability examination with state disability examiner Gwendolyn McCurdy on September 3, 2009. (R. 75-83). The disability examiner's report indicates that Plaintiff has only moderate exertional limitations. *Id*. Specifically, the report mentions that Plaintiff can occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk (with normal breaks) for about 6 hours a day, and sit (with normal breaks) for 6 hours a day. (R. 77). The report also notes that Plaintiff's push and/or pull capabilities are limited in both her upper and lower extremities. *Id*. Most importantly, the disability examiner found that "[t]he severity alleged [by Plaintiff] is not consistent with the objective findings in the file." (R. 81). Finally, on September 10, 2010, Plaintiff saw Dr. Badewa at Utmost Health Care Center for back pain. (R. 416). He found that she has "reduced thoraclumbar flexion" in her back. (R. 417).

## III. The ALJ's Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant

is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

### IV.   Plaintiff's Argument for Reversal

The court has done its best to interpret Plaintiff's arguments generously, so that they can be fairly evaluated. First, Plaintiff argues that the ALJ's RFC assessment is unsupported by substantial evidence because the record is bereft of medical source opinions. (Pl.'s Mem. 5-7). Second, Plaintiff argues that the ALJ violated his duty to develop the record. (Pl.'s Mem. 7). While the ALJ did rely on a RFC assessment, a medical doctor did not conduct that assessment. This, Plaintiff alleges, is a fatal deficiency in the ALJ's RFC determination. As a result, Plaintiff claims that the ALJ should have ordered a consultative examination with a medical expert. Plaintiff's final argument is that the ALJ should have made his disability determination based on the dual assessment of a medical consultant and disability examiner, rather than relying on the disability examiner alone. (Pl.'s Mem. 6-7).

### V.   Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district

court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI.    Discussion

After careful review, the court finds that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence. Plaintiff raises three arguments. First, the ALJ's RFC findings are not based on substantial evidence because they do not rely on medical evidence. (Pl.'s Mem. 5-7) Second, the ALJ failed in his duty to develop the record, because he should have ordered a consultative examination in order to gather more medical evidence. (Pl.'s Mem. 7). Third, the ALJ improperly based his disability determination on the opinion of a state disability examiner, when he should have consulted the dual assessment of a state disability examiner and a medical consultant. (Pl.'s Mem. 6-7).

As an initial matter, the court notes that Plaintiff only challenges the ALJ's physical RFC findings, and not his mental RFC findings. (Pl.'s Mem. 5-7). None of Plaintiff's three arguments

have merit. First, the ALJ based his RFC findings on the extensive medical evidence on the record. Plaintiff claims that the ALJ should have consulted a particular kind of medical source opinion: one that assesses the Plaintiff's RFC. *Id*. However, the ALJ makes his RFC determination based on the whole record, and has no obligation to give weight to a particular medical source's views on Plaintiff's physical restrictions.

Second, the ALJ was not required to order a consultative examination, given that the record provided ample evidence for him to make a decision. In any case, the burden was on the Plaintiff to produce evidence supporting her disability claim.

Finally, the ALJ does not have to base his disability determination on the dual assessment of a medical consultant and disability examiner. In fact, because the ALJ's decision is based on the entire record, it is at his discretion whether he wants to assign weight to a state disability determination at all.

### A.    Medical Evidence Supports the ALJ's RFC Assessment

Plaintiff argues that the ALJ's RFC assessment is unsupported by substantial evidence because the record is bereft of medical source opinions. Plaintiff presents two arguments to support this argument. First, Plaintiff alleges that the ALJ himself admitted to reaching his RFC assessment without consulting medical evidence. Plaintiff asserts that this proposition is evidenced by the ALJ's comment that he was "without the benefit of any medical opinion which would assess physical restrictions other than State Agency review." (Pl.'s Mem. 5). Plaintiff further argues that this is also demonstrated by the ALJ's purported concession that he had nothing more to do than merely reduce the exertional level from a medium RFC to a light RFC with a sit/stand option. (Pl.'s Mem. 6). Second, Plaintiff alleges that the ALJ's RFC

determination was based solely on nonmedical evidence, in contravention of 20 C.F.R. § 404.1513(a). (Pl.'s Mem. 6).

The court rejects Plaintiff's assertions for three reasons. First, Plaintiff's argument is based on a misrepresentation of the record, because there is no evidence that the ALJ failed to consult a medical source in reaching his RFC findings. Second, the ALJ actually did consult medical evidence in reaching his RFC findings. Third, the ALJ has no duty to base his RFC findings on a medical source opinion.  The court addresses each of these arguments in turn.

### 1. Plaintiff Misquotes the ALJ and Mischaracterizes Facts on the Record

Plaintiff selectively quotes the ALJ to suggest that he reached his final RFC determination "without the benefit of any medical opinion which would assess physical restrictions other than State Agency review." (Pl.'s Mem. 5). She argues that the ALJ himself concedes that he reached his RFC determination without consulting any medical evidence. *Id*.

Plaintiff's argument mischaracterizes the record. When read in context, it is apparent that the ALJ was discussing his findings regarding Plaintiff's subjective allegations of pain:

> I recognize that the claimant has consistently battled ongoing **pain** and a limited range of motion in her cervical and lumbar spine, but it is difficult to find objective medical evidence to support her contention that her physical condition worsened to the point of disability when she ceased work in December 2008. Dr. James Tomlinson, M.D., noted Ms. Pratt's limited range of motion in November 2007 (Ex 4F), while she continued to work, and treating physicians at Greystone Neurology and Utmost Health Care Clinic reported the same mild decrease in her range of motion in October and November 2010 (Ex 15F, p. 7; 14F, p. 4) long after her layoff. Recent physical exams noted normal gait and normal sensation of the spine and continued conservative treatment with pain medications and injections (Ex 15F). Diagnostic studies, meanwhile, have failed to ever establish any evidence of neuropathy or radiculopathy (Ex 12F, p. 5). All of this evidence corroborates the report of the consultative examiner, Dr. Rodolfo Veluz, M.D. (Ex 9F), who recorded the absence of tenderness in the spine, a normal gait and a mildly reduced range of motion. Due

> to her chronic pain, Dr. Veluz does believe claimant "truly has a problem" and I find the claimant sincere in her assertions, especially in light of varied work history even up to the heavy exertional level (Ex 3E). At the same time, her statements are not necessarily supported by medical evidence, and **I am without the benefit of any medical opinion that would assess physical restrictions for Ms. Pratt other than a state agency review** clearing her to perform labor at the medium exertional level (Ex 2A). Still, in attempting to view the evidence in a light most favorable to the claimant, I have reduced her residual functional capacity (RFC) to the light exertional level and included a sit or stand option based upon her testimony.

(R. 25) (emphasis added).

To claim a disability based on subjective complaints of pain, a claimant must satisfy the Eleventh Circuit's three-part pain standard. This standard holds that "[t]here must be [1] evidence of an underlying medical condition and [2] there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or [3] the objectively determined medical condition must be of severity which can reasonably be expected to give rise to the alleged pain." *Elam v. Railroad Retirement Board*, 921 F.2d. 1210, 1215 (11th Cir. 1991).

In the passage quoted above, the ALJ was merely pointing out that Plaintiff failed to meet the threshold requirement that she must produce objective medical evidence that confirms the severity of the alleged pain arising from her condition. In other words, when the ALJ indicated that he was "without the benefit of any medical opinion," he was not discussing his ultimate RFC findings, but rather indicating the paucity of medical evidence supporting Plaintiff's claims of subjective pain. Despite the lack of evidence supporting Plaintiff's complaints of pain, the ALJ nonetheless gave her the benefit of the doubt. He reduced the exertional level down a step from a medium to a light level. There's an old adage – no good deed ever goes unpunished. A review of the record makes this much clear: Despite Plaintiff's inaccurate representation of the record, there is nothing to suggest that the ALJ reached his RFC determination without consulting

medical evidence. Indeed, just the opposite is true. The record supports the conclusion that the ALJ extensively consulted the medical evidence in reaching his RFC determination.

### 2. The ALJ Consulted the Medical Evidence of Record in Reaching His RFC Findings

Plaintiff argues that the ALJ's final RFC determination is unsupported by medical evidence because none of the consultative evaluations used to reach the final physical RFC determination were conducted by medical source opinions. (Pl.'s Mem. 5). But this contention is flatly refuted by the record. Indeed, in assessing Plaintiff's physical restrictions, the ALJ consulted numerous medical sources.

The ALJ considered evidence that the Plaintiff submitted in support of her claims of physical pain. (R. 22-26). First, the ALJ considered that Plaintiff suffered from disc degenerative disease, and that she received pain medication, steroid injections, and heat and electrical stimulation in November 2007 to treat that condition. (R. 22, 293). Later that same month, Dr. Sandy confirmed that Plaintiff has disc degenerative disease, and the ALJ acknowledged this. (R. 22, 317). The ALJ further considered that Plaintiff received treatment from Dr. Purdy for chronic neck and back pain until February 2009. (R. 22, 319-338). With regard to Dr. Purdy's assessment, the ALJ was highly deferential to Plaintiff. The ALJ wrote that Dr. Purdy diagnosed her with fibromyalgia, even though Dr. Purdy's notes from February 2009 merely indicate that "[Plaintiff] wonders if she might have fibromyalgia." (R. 319). The ALJ even found that Plaintiff has a medically determinable impairment of fibromyalgia. (R. 22).

Next, the ALJ looked to Plaintiff's August 2009 consultative exam with Dr. Veluz, who also noted that Plaintiff has chronic back pain, as well as some difficulty squatting and walking. (R. 22, 350-351). At the same time, in assessing Dr. Veluz's records, the ALJ found that they did not demonstrate that Plaintiff's physical restrictions are severe. (R. 25). Specifically, Dr. Veluz

found that Plaintiff has only a mildly reduced range of motion and no back tenderness. (R. 25, 350-353).

The ALJ also considered Dr. Tomlinson's November 2007 finding that Plaintiff has "some decreased range of motion of the lumbosacral spine." (R. 25, 284). Further, the ALJ acknowledged that Plaintiff's physicians at Greystone Neurology (R. 25, 422-432) and Utmost Health Care Clinic (R. 25, 416-419) confirmed Dr. Tomlinson's report that Plaintiff has a decreased range of motion, in October and November 2010, respectively.[1] At the same time, the ALJ noted that Dr. Moon's January 2008 electroneurodiagnostic report indicated that Plaintiff showed no signs of neuropathy or radiculopathy. (R. 25, 374-376). Most importantly, the ALJ pointed out that none of Plaintiff's medical evidence indicates a worsening of her condition in December 2008, the point where she claims that her disability began. (R. 25).

In light of all of this evidence, the ALJ ultimately gave weight to the report of the state agency disability examiner Gwendolyn McCurdy, which cleared Plaintiff to perform labor at the medium exertional level. (R. 25, 75-83). In terms of Plaintiff's exertional limitations, disability examiner found that Plaintiff can occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk (with normal breaks) for about 6 hours a day, and sit (with normal breaks) for 6 hours a day. (R. 77). The disability examiner also found that Plaintiff's push and/or pull capabilities are limited in both her upper and lower extremities. *Id*.

Plaintiff argues that the ALJ did not take into account the upper body restrictions that the disability examiner, McCurdy, assessed. (Pl.'s Mem. 6). In making this argument, Plaintiff seems to suggest that the disability examination indicated Plaintiff has great exertional

---

[1] Here the ALJ's citation to the record is off the mark. Utmost Health Care Center's records indicating Plaintiff's "reduced thoraclumbar flexion" are actually from September 2010. The court is unable to locate anything in Greystone Neurology's records that indicate Plaintiff has a decreased range of motion. Nonetheless, the ALJ's findings on this point only benefit Plaintiff, and demonstrate that he more than fairly evaluated her claims.

limitations, but that the ALJ arbitrarily ruled that her exertional limitations are only minor. The court disagrees. The ALJ actually (and again) gave Plaintiff the benefit of the doubt. The ALJ reduced Plaintiff's RFC to the light exertional level, even though McCurdy opined that she was capable of performing work at the medium exertional level. (R. 25).

The court concludes that the ALJ consulted a large amount of medical evidence in reaching his physical RFC findings. Plaintiff does not contest the weight the ALJ assigned to various medical sources, with the exception of the above argument about the upper body restrictions that McCurdy assessed. For the most part, Plaintiff merely accuses the ALJ of not consulting medical sources at all. Contrary to this assertion, the record supplies more than substantial evidence which supports the ALJ's physical RFC findings. And the record makes clear that the ALJ assessed that evidence.

### 3. The ALJ Had No Duty to Base his RFC Findings on a Particular Medical Source Opinion

Plaintiff next alleges that the ALJ's RFC determination was based solely on nonmedical evidence in contravention of 20 C.F.R. § 404.1513(a). (Pl.'s Mem. 6). Specifically, Plaintiff uses the term "medical source opinion" to refer to a particular kind of medical source opinion: one that indicates the medical source's views on Plaintiff's physical restrictions. This argument lacks merit for two reasons. First, the ALJ based his RFC determination on the entire record, and was not required to rely on a particular medical source opinion. Second, Section 404.1513 outlines the evidence that Plaintiff must bring in support of her claim; it does not dictate how the evidence the ALJ must evaluate it.

The ALJ is responsible for assessing the claimant's RFC. 20 C.F.R. § 404.1546(c). The ALJ assesses the claimant's RFC based on "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). During his fact-finding, the ALJ considers the findings of physicians as

well as state agency medical consultants as opinion evidence. 20 C.F.R. § 404.1527(e)(2)(i). However, the ALJ does not have to consider these sources in his ultimate determination about whether the claimant is disabled. *Id*.

Social Security Ruling 96-5p confirms this reading of the Commissioner's regulations. RFC refers to the ALJ's administrative determination of what work the claimant can do despite her limitations. Social Security Ruling 96-5p, 61 Fed. Reg. 34471, 34473 (July 2, 1996). A medical source opinion, on the other hand, is just that − a medical source's opinion on what work the claimant can do despite her limitations. *Id*. The ALJ is free to adopt the medical source opinion in his RFC determination; however, he is not required to do so. *Id*.

Further, the regulations do not require the ALJ to use a medical source opinion in his RFC determination. *Langley v. Astrue*, 777 F.Supp.2d 1250, 1261 (N.D. Ala. 2011). *Langley* relies on *Green v. Soc Sec. Admin.*, 223 F. App'x 915, 922-924. In *Green*, the ALJ discredited the physical capacities evaluation ("PCE") of the claimant's treating physician, which was the only medical source opinion on the record. *Id*. The claimant argued that the ALJ's decision lacked substantial evidence because, without the PCE, it did not employ a medical source opinion. *Id*. Nonetheless, the Eleventh Circuit concluded that substantial evidence supported the ALJ's decision, because other doctors indicated that claimant's symptoms were not severe. *Id*. Therefore, the court rejects Plaintiff's argument that the ALJ's RFC findings should have relied on a medical source opinion.

Additionally, Plaintiff's argument misunderstands Section 404.1513. That provision discusses what evidence a claimant must present to establish an impairment. Depending on the type of impairment claimed, the claimant must produce evidence from a physician, psychologist,

optometrist, podiatrist, and/or speech-language pathologist. *See* 20 C.F.R. § 404.1513. This has nothing to do with what evidence the ALJ may properly consult in making his RFC findings.

### B. The ALJ Properly Developed the Record

Plaintiff's second argument is that the ALJ failed in his duty to develop the record. This argument is necessarily contingent upon the merits of Plaintiff's first argument − that the ALJ reached his RFC without consulting medical evidence. That is, Plaintiff asserts that because of that purported deficiency, the ALJ was obligated to obtain a consultative examination. (Pl.'s Mem. 7). As the court has already noted in addressing Plaintiff's first argument, it is refuted by the record. The ALJ consulted a bevy of medical evidence in making his RFC findings, and Plaintiff gives no reason why further findings would be needed to make an informed decision.

Finally, the Plaintiff has the burden to produce evidence in support of her disability claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). It is not the ALJ's fault that Plaintiff failed to carry her burden of proving she has a disability. The ALJ evaluated her disability claim based on all of the evidence available to him. That was the extent of his responsibility here; he had no duty to serve as her advocate.

### C. The ALJ Assesses RFC and Does Not Have to Rely on the Dual Determination of a Medical Consultant and Disability Examiner

Finally, Plaintiff argues that the ALJ erred in basing his RFC findings on a disability examiner's disability determination, when both a disability examiner and a medical consultant should have made the disability determination. (Pl.'s Mem. 6-7). The court concludes that the ALJ had no obligation to base his RFC findings on the dual disability determination of both a disability examiner and a medical consultant.

The Commissioner's regulations impose different requirements on RFC assessments, depending on whether the assessment occurs at the state agency level, after a disability hearing,

or at the conclusion of an ALJ hearing. *See* 20 C.F.R. § 404.1546. At the state agency level, RFC is assessed based on a disability determination. *Id*. When a state agency disability examiner makes the disability determination (in conjunction with either a state agency medical or psychological consultant), a state agency medical or psychological consultant assesses the RFC. *See* 20 C.F.R. §§ 404.1546(a) and 404.1615(c)(1). When a state agency disability examiner makes the disability determination alone, the disability examiner assesses the RFC. *See* 20 C.F.R. §§ 404.1546(a) and 404.1615(c)(3). Such requirements do not apply at the ALJ level, where it is the ALJ who assesses the RFC. *See* 20 C.F.R. § 404.1546(c).

Plaintiff argues that the disability examiner must make a disability determination in conjunction with a medical consultant under 20 C.F.R. § 404.1615(c). (Pl.'s Mem. 6-7). Plaintiff claims that there is but one exception to this requirement − when there is no medical evidence, and the claimant refuses to attend a consultative examination. *Id*. Plaintiff's argument would be on the mark if this dispute concerned a decision at the state agency level; however, this court is reviewing an ALJ's decision. As mentioned previously, at the ALJ level, there is no requirement that the ALJ assess the RFC based on a disability determination at all, much less a disability determination conducted by multiple examiners. *See* 20 C.F.R. § 404.1546(c); *see also* 20 C.F.R. § 404.1545(a)(3).

## VI.   Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with his memorandum of decision will be entered.

**DONE** and **ORDERED** on August 12, 2013.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE